677 N.W.2d 428 (2004)
In the Matter of Petitions to Adopt T.L.A. and T.E.A. and In the Matter of Children in Custody of the Commissioner of Human Services.
No. A03-973.
Court of Appeals of Minnesota.
April 6, 2004.
*429 Steven V. Rose, BenePartum Law Group, PA, Minneapolis, MN, for appellants J.A. and S.A.
Steven L. Gawron, Gawron & Associates, P.A., Bloomington, MN; and Kevin P. Staunton, Staunton Law Group, P.L.L.C., Edina, MN, for respondent M.R.
Amy Klobuchar, Hennepin County Attorney, Nancy K. Jones, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County.
Jonathan G. Steinberg, Chrastil and Steinberg, P.L.L.P., Minneapolis, MN, for Guardian Ad Litem.
Considered and decided by SHUMAKER, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

OPINION
MINGE, Judge.
Appellants, great-aunt and great-uncle of T.L.A. and T.E.A., challenge the commissioner's decision to withhold consent to their adoption of the children. Because Minnesota law allows a biological parent who relinquishes parental rights to direct that the commissioner not consider relatives as an adoptive placement, because the relative preference for adoptive placement is only one factor in determining a child's best interests, and because the district court did not abuse its discretion in finding that the commissioner's decision was in the best interests of the children, we affirm.

*430 FACTS
T.A. is the mother of T.L.A. and T.E.A., who were born in March 1999 and August 2000, respectively. T.A. has a history of prostitution and drug addiction. Shortly after the birth of T.E.A., Hennepin County Department of Children, Family and Adult Services (Hennepin County) filed a petition stating that the children were in need of protection or services.
Appellants J.A. and S.A. are sister and brother and T.A. is their niece. In August 2000, T.E.A. was placed in emergency foster care with appellant J.A. T.L.A. was placed with J.A. a month later. Within a few days of T.L.A.'s arrival, appellant J.A. contacted Hennepin County demanding that the children be removed immediately. Hennepin County offered J.A. supportive services and advised her that if she gave up the children it might affect subsequent adoption decisions. J.A. insisted, however, and the children were placed in an emergency shelter home until respondent M.R. took them into her home.
T.A. and respondent M.R. are close friends. T.A. considers M.R. to be "kin" and chose M.R. to be her godmother. T.A. heavily relied on M.R. for help with the children and M.R. has cared for the children for extended periods of time.
In 2001, the district court ordered that the children be reunified with T.A. This reunification lasted for approximately one year. During this period of time, appellant S.A. visited with the children once. J.A. did not have any contact with the children. M.R., however, was a frequent visitor. When T.A. became incapable of caring for the children, M.R. intervened on the children's behalf and they were placed with her where they now remain.
Both T.A. and the father of the children voluntarily terminated their parental rights, and the district court ordered their rights terminated. By law, the commissioner of the Minnesota Department of Human Services (commissioner) became the guardian and legal custodian of the children. Appellants and M.R. both filed petitions for adoption. After first identifying M.R. as the preferred adoptive parent, and then favoring adoption by appellants, T.A. finally directed that the commissioner reject appellants as adoptive parents and designated M.R. as the preferred adoptive parent. The commissioner reviewed the matter and determined that the state would not consent to adoption by appellants. A contested adoption hearing was scheduled and the district court determined that the issue of whether the commissioner reasonably withheld consent would be tried first, and bifurcated from consideration of the competing adoption petitions of appellants and respondent.
The district court held a six-day hearing on the commissioner's refusal to consent to adoption by appellants and the facts as they pertained to adoption placement. There was evidence that appellants had not had significant contact with T.A. until she was unable to care for her children and that T.A. felt unsupported and abandoned by appellants. There was also testimony that, apparently because of T.A.'s history of drug use and prostitution, appellants were not willing to have contact with T.A. and the children as long as she retained her parental rights and that, if appellants became adoptive parents, they would not allow her contact with the children. The district court found that M.R. had been loving and supportive of the children and maintained contact with them despite T.A.'s drug abuse and prostitution. The district court entered an amended order finding that the commissioner did not unreasonably withhold his consent for appellants to adopt. This appeal followed.

ISSUES
1. Did the commissioner improperly withhold its consent from appellants to adopt?
*431 2. Did the district court err in admitting the testimony of Robert Denardo?
3. Did the district court err in assigning the burden of proof to appellants?

ANALYSIS

I.
The first issue is whether the commissioner improperly withheld its permission from appellants to adopt. Appellants argue that the district court misapplied the adoption statute by failing to give them a relative preference over respondent M.R. Because appellants raise a question of statutory interpretation, this court's standard of review is de novo. In re Adoption of C.H. and A.H., 554 N.W.2d 737, 742 (Minn. 1996).
In making adoption decisions, the overriding policy of the state of Minnesota and the purpose of the adoption statutes are to ensure that the best interests of children are met. Minn.Stat. § 259.20, subd. 1 (2002). When a petition for adoption is filed, and the children who are the subject of the adoption are without a parent or guardian, the commissioner is the legal custodian and guardian of the children and is authorized to consent to an adoption. Minn.Stat. § 259.24, subd. 1(d) (2002). "Consent to an adoption shall not be unreasonably withheld by ... the commissioner or by an agency." Minn.Stat. § 259.24, subd. 7 (2002).
Appellants' argument that they should be the preferred placement over M.R. is based on caselaw developed from previous versions of the adoption statute. At this time, the Minnesota statutes state that the commissioner must consider the following in consenting to and preferring adoption placements:
PROTECTION OF BEST INTERESTS IN ADOPTIVE PLACEMENTS
Subdivision 1. Best interests of the child. (a) The policy of the state of Minnesota is to ensure that the best interests of the child are met by requiring individualized determination of the needs of the child and of how the adoptive placement will serve the needs of the child.
....
Subd. 2 Placement with relative or friend. The authorized child-placing agency shall consider placement, consistent with the child's best interests and in the following order, with (1) a relative or relatives of the child, or (2) an important friend with whom the child has resided or had significant contact....
If the child's birth parent or parents explicitly request that placement with relatives or important friends not be considered, the authorized child-placing agency shall honor that request consistent with the best interests of the child.
Minn.Stat. § 259.29 (2002) (emphasis added). We note that once this request by the birth parent is made, the statute mandates that the commissioner honor the request so long as it is consistent with the best interests of the children. There is no requirement that the commissioner first determine whether appellants would provide an appropriate home so long as the alternative placement is in the children's best interests.
Even though earlier versions of the statute may have created a stronger preference for relatives, the resulting caselaw still required that the best interests of the child take priority over any other statutory considerations. See, e.g., In re Adoption of C.H. and A.H., 554 N.W.2d at 742 ("[T]he [relative] preference is not to be applied so as to override the overall best interests of the child."); In re S.T. and N.T., 512 N.W.2d 894, 898 (Minn.1994) (holding that the relative preference "is *432 only a preference. It is not a commandment to be followed blindly or mechanically irrespective of the particular needs of the individual children."). While the plain language of Minn.Stat. § 259.29 requires that relatives be given preference for adoptive placement, the preference is clearly lost if contrary to the best interests of the child or if the birth parent, consistent with the child's best interest, requests that relatives not be considered.[1] We find no compelling reason to adopt appellants' interpretation that the statute mandates a mechanical and automatic preference for relative placement. Such a reading is contrary to the plain language of the statute and caselaw.
Appellants argue that the commissioner should not have honored the birth mother's request that appellants not be considered for adoptive placement, that a non-relative placement was not in the children's best interests, and that the district court should have investigated the reasons behind T.A.'s request. Appellants' challenge to the commissioner's decision was considered by the district court in the course of a six-day hearing. The district court heard evidence from 17 witnesses and received almost 40 exhibits. The district court's order spans 30 pages and contains 178 detailed findings of facts, concluding that the commissioner's decision to withhold its consent from appellants to adopt was reasonable and in the children's best interests.
Citing to the required statutory factors, the district court not only concluded that placement of the children with M.R. would be consistent with their best interests, but also specifically found that placement with appellants would be contrary to their best interests. The district court stated:
[The mother, Hennepin County,] and the Commissioner, in turn, reasonably, and consistent with the best interest of the children, concluded that [M.R.] could provide the best home for [the children]. The core reasons  that [M.R.] is deeply bonded with the children, has always been there for them, has weathered every storm, understands the nuances of their family and their special needs, and has raised them during highly critical, formative years  are fully and overwhelmingly validated by the persuasive and credible evidence at trial. The absence of any similar role played by [appellants], and their lack of parenting skills attuned to the special needs of their children, and certain other characteristics borne out at trial, prove persuasively that the choice of [M.R.] is reasonable, and not arbitrary.
We understand that appellants are sincere family members with a genuine interest in the welfare of the children and are committed to doing the best they can for them. They do not want the children exposed to any bad influence by T.A. given her past lifestyle of drug abuse and prostitution. But, in determining the best interests of the children, the district court considered all dimensions of the situation and explained the basis of its decision in detail. At the time of its order, the district court found that T.A. was drug free, law-abiding, and has gifts and emotional contributions that will enhance the lives of T.L.A. and T.E.A. The court also noted that M.R.'s willingness to allow T.A. to play a role in the children's lives was contingent on T.A. remaining sober for 18 months and provided that she also remains law-abiding.
*433 We conclude that the district court did not err in ruling that the commissioner should withhold consent to relative adoption when the birth parent requests that consent be so withheld and when that request is consistent with the best interests of the children. We further conclude that the district court did not abuse its discretion in determining that the record supported the commissioner's decision, that the birth mother's request was consistent with the best interests of the children, and, therefore, that the commissioner's decision to withhold consent was reasonable.

II.
The second issue is whether the district court committed reversible error in admitting the testimony of Robert Denardo. Denardo is an employee of the Minnesota Department of Human Services who is familiar with the agency's role in the adoption process. Appellants contend that Denardo's testimony was not admissible because he is not an attorney, was not qualified as a legal expert, and should not have been allowed to render an opinion as to whether proper polices and procedures were followed by the commissioner. Absent an erroneous interpretation of the law, the question of whether to admit or exclude evidence is within the district court's discretion. Kroning v. State Farm Auto. Ins. Co., 567 N.W.2d 42, 45-46 (Minn.1997). "Entitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." Id. at 46 (quotation omitted).
Denardo testified to the policies and procedures utilized when the commissioner grants or withholds consent for adoption. As the individual who reviews recommendations for consent from the counties, Denardo explained how he examines files to ensure the county evaluates cases according to statutory mandates  in this case the best interests of the child standard. Despite appellants' argument, there is no evidence that Denardo's testimony was offered as an expert opinion or actual legal determination that the agency's actions were according to statute. Even if the content of Denardo's testimony was in some way improper, it does not appear that it was prejudicial error that warrants a new trial. Accordingly, we conclude that the district court did not err in allowing the admission of Denardo's testimony.

III.
The third issue we face is whether the district court erred in assigning appellants the burden of proof to show that the commissioner's decision was unreasonable. In another area of law, this court has stated:
All agency decisions receive a presumption of regularity; the burden of proof is on the challenger to establish that the agency's decision was improperly reached. Deference is shown to agency expertise, lest the court substitute its judgment for that of the agency.
M.T. Props., Inc. v. Alexander, 433 N.W.2d 886, 893 (Minn.App.1988) (citation omitted), review denied (Minn. Feb. 22, 1989).
Appellants compare the commissioner's position here to that of the challengers in In re S.T. and N.T. There, the supreme court determined that the foster parents, who challenged the placement of the children with relatives, bore a "significant burden to overcome given the statutory and common law preference for adoptive placement with relatives." In re S.T. and N.T., 512 N.W.2d at 898 (Minn.1994). Appellants argue that the commissioner stands in the same position as the foster parents in that case and must therefore bear the burden of overcoming the statutory relative preference.
*434 Appellants' argument is flawed. First, we note that the case of S.T. applied to a dispute between foster parents and relatives; the state was not a party and there was no directive from a natural parent. Therefore, the language of that case is not applicable to the review of agency decisions. We also note that appellants' assignment of the burden of proof to the commissioner assumes an automatic relative preference. However, as we conclude above, the language of the current statute and the caselaw clearly reject this position.
Finally, appellants' argument ignores the district court's alternative conclusion that, even if the commissioner bore the burden of proof "the Commissioner has proven, by a preponderance of the evidence, that its decision to withhold consent to [appellants] to adopt [the children] is reasonable, supported by substantial evidence, and not arbitrary or capricious." Based on this and other determinations, we reject appellants' argument regarding the burden of proof.

DECISION
We conclude that the district court did not err in ruling that the commissioner reasonably withheld consent to relative adoption when the birth parent requested that consent be so withheld and when that request was consistent with the best interests of the children. We further conclude that the district court did not abuse its discretion in upholding the commissioner's decision that the birth mother's request was consistent with the best interests of the children. Finally, we find the district court did not abuse its discretion in admitting Denardo's testimony or err in placing the burden of proof on appellants.
Affirmed.
NOTES
[1] The statutes identify several factors that must be considered in determining the best interests of children in adoption cases. See Minn.Stat. § 260C.212, subd. 2(b) (2002); see also Minn.Stat. § 259.29, subd. 1(b) (2002); Minn.Stat. § 260C.193, subd. 3 (2002).